IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> FILTHY FUHRER, ROY NAUGHTON, GLEN BALDWIN, COLTER O'DELL, and CRAIG KING, <br><br> Defendants. | Case No. 3:19-cr-00026-TMB-SAO <br><br> ORDER ON DEFENDANTS' MOTIONS TO REMAIN UNSHACKLED DURING TRIAL (DKTS. 1032, 1035) <br><br> **REDACTED** |

## I. INTRODUCTION

The matter comes before the Court on (1) Defendant Craig King's Motion to Remain Unshackled During Trial and Objection to Impression of Dangerousness Created by Setup of Courtroom[1] and (2) Filthy Fuhrer's Motion to Remain Unshackled During Trial[2] (collectively the "Motions"). King and Defendant Glen Baldwin join Fuhrer's Motion,[3] and Defendants Colter O'Dell and Roy Naughton join both Motions.[4] The Government opposes the Motions.[5] Having considered the briefing and the recommendation of the U.S. Marshal Service, the Court **DENIES**

---

[1] Dkt. 1032 (King's Motion).

[2] Dkt. 1035 (Fuhrer's Motion).

[3] Dkt. 1036 (Baldwin's Notice of Joinder); Dkt. 1042 (King's Notice of Joinder).

[4] Dkt. 1037 (O'Dell's Notice of Joinder) 1043 (Naughton's Notice of Joinder).

[5] Dkt. 1034 (Opposition to King's Motion); Dkt. 1045-2 (Sealed Opposition to Fuhrer's Motion).

1

the Motions and **ORDERS** that all defendants will be minimally restrained during trial as described below.

## II. BACKGROUND

The Defendants are alleged members or associates of a purported white supremacist gang called the "1488s."[6] The Defendants are charged by Superseding Indictment with 11 counts relating to the alleged kidnap, assault, and murder of Michael Staton, the alleged kidnap and assault of Jermiah Johnson, and the alleged kidnap and assault of Jeremy Smith.[7]

Trial is set to begin March 14, 2022, in Anchorage Courtroom 2, which the Court remodeled to accommodate multi-defendant criminal jury trials. Most notably, a portion of the gallery in Courtroom 2 was replaced with counsel tables for each defendant and an additional table for defense support. All counsel and support tables have been securely fitted with opaque black skirting designed to ensure defendants' restraints are not visible to the jury and to provide continuity of furnishings. There will be sufficient personnel to meet the security needs of this trial. In balancing both the concerns raised by defense counsel and the safety of the parties, court staff, and public, the Court, in conjunction with the U.S. Marshal Service, has taken steps as set out in this Order.

At the final pretrial conference on March 4, 2022, defense counsel for King and O'Dell notified the Court of their intent to move to proceed during trial without physical restraints. Defense counsel told the Court that representatives of the U.S. Marshal Service had notified the parties of their expectation that during trial the defendants' legs would be shackled to D-rings installed in the floor under counsel tables and entirely out of sight of the jury. This expectation

---

[6] Dkt. 558 at 2 (First Superseding Indictment).

[7] *See generally id.*

was based on the Marshal Service's security protocols for multi-defendant trials. The Marshal Service explained that with these particular restraints, defendants can sit, stand, and move their feet and that the shackles are wrapped in duct tape so as to eliminate any noise.

King now moves to be present at trial without restraints.[8] King argues restraints (1) are unjustified because he has never been convicted of a violent crime, (2) will destroy his presumption of innocence, and (3) will impair his ability to fully participate in the trial and assist counsel.[9] King believes that even if the shackles are not visible, the jury will infer he is shackled based on his inability to move around the courtroom.[10] King also objects to the setup of the courtroom, which he describes in some detail.[11] Primarily, King fears that the presence of what he estimates might be 14 deputy marshals lining the "u-shaped pit" of defendants will leave the impression that King is in custody and dangerous.[12] King also raises concerns that the spectator seating faces the defense tables rather than the front of the courtroom and that the Government's counsel table is a "normal table, such that the jury can see the entire body of any person sitting behind it."[13]

---

[8] Dkt. 1032.

[9] *See generally id.*

[10] *Id.* at 5.

[11] *See generally id.*

[12] Dkt. 1032 at 3, 5.

[13] This claim is inaccurate—the table allocated to the Government has a large wood panel shielding the lower half of any person sitting behind it from view of the jury. Even so, the Court has added skirting to this table to match the defense counsel tables to ensure the jury does not draw inferences from the appearance of counsel tables for the defense.

3

Fuhrer also moves to proceed without restraints but does not object to the courtroom setup generally.[14] Fuhrer argues he has done nothing since the indictment was filed to suggest that he would attempt to escape, engage in any form of violence, or be disruptive.[15]

In opposition, the Government argues leg shackles are appropriate and necessary under the circumstances to protect the safety of those involved in the trial.[16] The Government cites several reasons it believes minimal restraints are justified here, including but not limited to the following:

1. "The Marshal's Service, which bears responsibility for the safety of everyone in the courtroom, has evaluated this case and determined that minimal shackling of the defendant's legs only is necessary to effectuate a safe trial, given the number of defendants and the amount of time all will be in court. This Court is entitled to give great weight to their recommendation."[17]

2. "In ▮▮▮▮▮▮," while awaiting trial in this case, "▮▮▮▮▮▮ ▮▮▮▮▮▮ were charged with assaulting ▮▮▮▮▮▮ ▮▮▮."[18]



3. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[14] Dkt. 1035.

[15] *See generally id.*

[16] Dkt. 1034 at 6.

[17] *Id.* at 5–6.

[18] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[19] *Id.*

4

4. "▮▮▮ was involved in a ▮▮ riot ▮▮▮▮ in which he and 13 other[s] ▮▮▮▮ caused more than $21,000 in damage ▮▮▮▮▮▮▮▮"[20]

5. King presents a safety risk based on the serious allegations in this case; "[t]he evidence indicates that [King] actively participated in, and at times directed, the brutal kidnapping, torture, and murder of Michael Staton."[21]

6. King "presents an enormous risk of flight and outburst in the courtroom. He repeatedly attempted to conceal evidence of contraband from Pretrial Services and the Court in connection with prior court proceedings. He told his wife (and now codefendant) Felicia King that he would rather die than be convicted and sentenced in this case."[22]

### III. LEGAL STANDARD

"In the presence of the jury, [the defendant] is ordinarily entitled to be relieved of handcuffs, or other unusual restraints, so as not to mark him as an obviously bad man or to suggest that the fact of his guilt is a foregone conclusion."[23]

But a "trial judge has wide discretion to decide whether increased security measures are required when dealing with a defendant who has a propensity for violence."[24] A court may order

---

[20] *Id.* at 2.

[21] Dkt. 1034 at 3.

[22] *Id.* at 4.

[23] *United States v. Cazares*, 788 F.3d 956, 965 (9th Cir. 2015) (quoting *Stewart v. Corbin*, 850 F.2d 492, 497 (9th Cir. 1988)).

[24] *Id.*

5

that a defendant be shackled during trial if the court is "persuaded by compelling circumstances that some measure is needed to maintain security of the courtroom" and considers "less restrictive alternatives before imposing physical restraints."[25] "Under certain circumstances, 'shackling . . . may be appropriate because of the public's competing interest in courtroom security and the just administration of law.'"[26] For example, "shackling is proper where there is a serious threat of escape or danger to those in and around the courtroom or where disruption in the courtroom is likely in the absence of shackles."[27] In multi-defendant trials, the court may consider the danger posed by the defendants as a group.[28] As the Ninth Circuit has said, "defendants acting in concert pose a risk far exceeding that which would be posed by any one individually."[29]

The Ninth Circuit has identified the following problems that a court should consider in its decision to shackle: restraints may (1) cause jury prejudice, reversing the presumption of innocence; (2) impair the defendant's mental faculties; (3) impede the communication between the defendant and his lawyer; (4) detract from the dignity and decorum of the judicial proceedings; and (5) cause the defendant pain.[30]

---

[25] *Id.* (quoting *Duckett v. Godinez*, 67 F.3d 734, 748 (9th Cir.1995)). The Ninth Circuit has "refuse[d] to hold," however, "that a trial court must conduct a hearing and make findings before ordering that a defendant be shackled." *Id.*

[26] *Duckett*, 67 F.3d at 748 (quoting *Spain v. Rushen*, 883 F.2d 712, 716 (9th Cir. 1989)).

[27] *Wilson v. McCarthy*, 770 F.2d 1482, 1485 (9th Cir. 1985).

[28] *United States v. Baker*, 10 F.3d 1374, 1402 (9th Cir. 1993), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000) ("The district court did not abuse its discretion in accepting the Marshal's recommendation that the defendants be treated as a group for security purposes.").

[29] *Id.*

[30] *Spain*, 883 F.2d at 721.

6

Case 3:19-cr-00026-TMB-SAO   Document 1057   Filed 03/13/22   Page 6 of 10

The court can "minimize[] or eliminate[]" prejudice to the defendant by ensuring jurors cannot see the restraints.[31] The Ninth Circuit has rejected the argument that a jury will infer a defendant is shackled and dangerous "based on the defendants' immobility during a trial," even "in a courtroom in which the marshals outnumbered the defendants."[32] The court explained "there is no expectation of mobility of defendants in the courtroom during trial."[33] Courts are similarly unpersuaded that "the presence of guards at a defendant's trial" will be "interpreted as a sign that he is particularly dangerous or culpable."[34] In short, "visibility of the shackles is critical to the determination of the due process issue."[35]

Accordingly, to make a successful claim that shackling at trial amounts to a due process violation, a criminal defendant must show "(1) that the defendant was physically restrained in the presence of the jury; (2) that the shackling was seen by the jury; (3) that the physical restraint was not justified by state interests; and (4) that he suffered prejudice as result of the shackling."[36]

## IV. DISCUSSION

In consult with the U.S. Marshal Service and having considered the briefing, the Court concludes leg shackles are the least restrictive means to maintain the safety of all those in the courtroom during trial. The Marshal Service has serious and justified security concerns in this case, not only because of the allegations of violence in the Superseding Indictment but also because of

---

[31] *Cazares*, 788 F.3d at 966.

[32] *Id.*

[33] *Id.*

[34] *Holbrook v. Flynn*, 475 U.S. 560, 569 (1986).

[35] *Cazares*, 788 F.3d at 966.

[36] *Id.* at 965 (citing *Cox v. Ayers*, 613 F.3d 883, 890 (9th Cir. 2010)).

the Defendants' conduct █████████. As described above, ███████████ are presently charged with assaulting ██████ while awaiting trial in this case; ███████ were involved in a ████ riot along with 12 others; ███████████████████████████████████████; and the Government reports King has said he would rather die than be convicted and sentenced in this case.[37] In addition, the Court has found evidence of specific threats against ███████████.[38] The Court finds restraints necessary to alleviate valid safety concerns accompanying this trial.

In addition, the Court has taken several steps to ensure the jury will not know the Defendants are shackled. To begin, the Court is confident the jury will not see the restraints: the Defendants will enter and exit the courtroom outside the presence of the jury; each defendant will have only their legs shackled—no waist chains or handcuffs will be used; and counsel tables are lined with table skirts to ensure the Defendant's legs are not visible to the jury.[39] The Court tested this setup: with people sitting at the defense tables, the Court sat in every juror's seat and confirmed the jurors will not be able to see the Defendant's legs, ankles, or feet. The Court is also confident the Defendants will not appear restrained: the Defendants will be able to sit and stand and slightly move their feet; the shackles will be wrapped in duct tape to mute any sound; and deputy marshals will be dressed in trial attire, not overtly as law enforcement.

---

[37] Dkts. 1034, 1045-2; *see also Cazares*, 788 F.3d at 965 (affirming district court's decision to use restraints for "a trial in which all four defendants were members of a violent gang, two of the defendants had already been sentenced to life sentences in state court, and all of the defendants were facing life sentences as a result of the federal charges").

[38] *See* Dkt. 259 (Order).

[39] The Court reinforced this table skirting after the final pretrial conference to ensure it is opaque and reliably secured to the table.

While the Court understands King's concern that he will be unable to readily consult with his counsel while his counsel is at the podium, King will be not be meaningfully forestalled from assisting in his defense. As the Government notes, "[t]he most King can offer"[40] is that his counsel must "move away from [King] to ask questions, and [King] cannot leave the table."[41] But it is not unusual for a defendant to remain at counsel table during trial. For that reason, the Court is also unpersuaded that the jury will infer from King remaining seated that he is in custody or shackled.[42] The Defendants may propose any jury instructions they would like the Court to consider on this issue.

In addition, the Court has taken several steps to modify the courtroom setup in response to the Motions. The courtroom has been made to look as uniform as possible; all tables will feature opaque black table skirts, including the Government's counsel table. Public seating now faces the front of the courtroom.[43] The Defendants' counsel tables are angled toward the jury.[44] There will be sufficient personnel to meet the security needs of this trial.

---

[40] Dkt. 1034 at 8.

[41] Dkt. 1032 at 5.

[42] *See Cazares*, 788 F.3d at 966.

[43] King asserts "[t]here were many court personnel and onlookers who came to the final pretrial conference. As they sat in the jury box and the small spectator section (which angle towards the defense tables rather than the front of the courtroom) the physical positioning of the defendants was akin to exhibits at a circus or a zoo." Dkt. 1032 at 2 n.1.

[44] King objects that the defense tables "in their u-shaped pen-like setup are behind the paralegal table and the podium, well away from the jury." Dkt. 1032 at 2–3.

9

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motions at Dockets 1032 and 1035. The Court finds there are no less restrictive alternatives and compelling circumstances require the Defendants be restrained as described above.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 13th day of March, 2022.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE