IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br><br>      v.<br><br>GLEN BALDWIN, a/k/a "Glen Dog"<br><br>                        Defendant. | Case No. 3:19-cr-00026-TMB-SAO-3<br><br>ORDER ON DEFENDANT BALDWIN'S MOTION TO EXCLUDE EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS (DKT. 804) |

## I. INTRODUCTION

Before the Court is Defendant Glen Baldwin's Motion to Exclude Evidence of Other Crimes, Wrongs, or Acts Pursuant to Federal Rule of Evidence ("Rule") 404(b) at Docket 804 (the "Motion").[1] Specifically, Baldwin asks the Court "to exclude any evidence regarding Baldwin's contact with Florida law enforcement, as well as any mention of his tattoos."[2] The Government opposes the Motion.[3] For the following reasons, the Court **GRANTS in part and DENIES in part** the Motion.

## II. BACKGROUND

Baldwin along with co-defendants Filthy Fuhrer, Roy Naughton, Colter O'Dell, and Craig King[4] are alleged members or associates of the 1488s, a purported criminal enterprise.[5] The

---

[1] Dkt. 804 (Motion).

[2] *Id.* at 2.

[3] Dkt. 953 (Opposition).

[4] This list includes only the defendants who will be tried beginning on March 14, 2022.

[5] Dkt 558 (First Superseding Indictment).

1

Defendants are charged by Superseding Indictment with Racketeering Conspiracy (Count 1); Violent Crimes in Aid of Racketeering ("VICAR") Conspiracy (Count 2); Kidnapping Conspiracy (Counts 3, 7, and 10); Kidnapping Resulting in Death (Count 4); VICAR Murder (Count 5); Kidnapping (Counts 8 and 11); and VICAR Assault (Counts 9, 10, and 12).[6] Fuhrer and Naughton are charged in all counts. O'Dell, Baldwin, and King are charged in Counts 1–5 only: Racketeering Conspiracy, VICAR Conspiracy, and counts relating to the alleged kidnap, assault, and murder of Michael Staton on August 3, 2017.[7] Trial on these charges is set to begin on March 14, 2022.

Relevant here, the Government alleges Baldwin "fled the State of Alaska following the [August 2017] murder of Michael Staton."[8] Eight months later, Baldwin was arrested in Seminole County, Florida, related to a "violent disturbance."[9] "The arresting officers found small amounts of marijuana, cocaine, and drug paraphernalia inside [Baldwin's] car"[10] and "observed blood and saliva on the passenger side door and the front console."[11] According to the Government, during the arrest, "Baldwin repeatedly refused to identify himself to police . . . before eventually giving them his name."[12] Then upon arrival at the jail, Baldwin reportedly "refused to cooperate with a LiveScan of his fingerprints" for intake and processing purposes.[13] "During the arrest, officers

---

[6] *Id.*

[7] *Id.*

[8] Dkt. 953 at 2.

[9] Dkt. 804 at 6.

[10] Dkt. 953 at 2.

[11] Dkt. 804 at 7.

[12] Dkt. 953 at 2.

[13] *Id.*

2

Case 3:19-cr-00026-TMB-SAO   Document 1059   Filed 03/13/22   Page 2 of 13

observed several swastika tattoos on Baldwin's body and the number '88' tattooed on his left shoulder."[14] The officers photographed Baldwin's tattoos.[15] Ultimately, "Baldwin was convicted of Resisting an Officer Without Violence and Possession of Drug Paraphernalia and was placed on 12 months of probation."[16]

In September 2020, the Government sent the Defendants notice of its intent to use "[e]vidence of Glen Baldwin's contact with Florida law enforcement in 2018, including photographs of his tattoos but not including a description of the reason for that contact."[17]

Now, Baldwin moves "to exclude any evidence regarding [his] contact with Florida law enforcement, as well as any mention of his tattoos."[18] The Government objects to the Motion and asserts that it "intends to introduce only two aspects of this incident: (1) During a contact with law enforcement officers in Florida on April 1, 2018, Baldwin refused to identify himself to police or provide his fingerprints, and (2) Baldwin's tattoos and statement about the 88s."[19] The Government represents that it does not intend to "offer any evidence regarding the reason for the contact or Baldwin's subsequent convictions."[20]

---

[14] *Id.*

[15] *Id.*

[16] *Id.* at 3.

[17] Dkt. 804 at 12.

[18] *Id.* at 2.

[19] Dkt. 953 at 3.

[20] *Id.*

3

### III.     LEGAL STANDARD

   A. *Motions in Limine*

"A motion *in limine* is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence"[21] and may be used to request evidence be either excluded or admitted before trial.[22] Motions *in limine* are appropriate when the "mere mention of evidence during trial would be highly prejudicial."[23] "*[I]n limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."[24]

A party seeking to exclude evidence through a motion *in limine* must satisfy a "high standard" and show the evidence is inadmissible on all potential grounds.[25] Otherwise, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."[26]

---

[21] *Barnard v. Las Vegas Metro. Police Dep't*, No. 2:03-cv-01524-RCJ-LRL, 2011 WL 221710, at *1 (D. Nev. Jan. 21. 2011); *Research Corp. Techs. v. Microsoft Corp.*, No. CV-01-658-TUC-RCJ, 2009 WL 2971755, at *1 (D. Ariz. Aug. 19, 2009).

[22] *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling *in limine* that prosecution could admit impeachment evidence under Fed. R. Evid. 609).

[23] *Barnard*, 2011 WL 221710, at *1 (quoting *Black's Law Dictionary* 1109 (9th ed. 2009)); *Research Corp.*, 2009 WL 2971755, at *1.

[24] *Ohler v. United States*, 529 U.S. 753, 758, n.3 (2000).

[25] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF*, 2010 WL 4534406, at *1 (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

[26] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF*, 2010 WL 4534406, at *1 (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

B. *Federal Rule of Evidence 404(b)*

Under Rule 404(b)(1), evidence of a defendant's prior conviction, wrong, or act is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[27] "This prohibition reflects the 'underlying premise of our criminal justice system, that the defendant must be tried for what he did, not for who he is.'"[28]

Rule 404(b) "is inapplicable, however, where the evidence the government seeks to introduce is directly related to, or inextricably intertwined with, the crime charged in the indictment."[29] Courts have found evidence is "inextricably intertwined" with the crime charged "and therefore need not meet the requirements of Rule 404(b)" where (1) the evidence "constitutes a part of the transaction that serves as the basis for the criminal charge" or (2) the evidence is necessary for "the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime."[30] This exception may include a defendant's refusal to identify himself. Generally, evidence of a defendant's refusal to identify himself is not offered as "evidence of a remote and distinct 'bad act,' introduced to allow the jury to draw the improper inference that [the defendant] was a liar," but is instead "probative of [the defendant's] consciousness that his conduct was illegal."[31]

---

[27] Fed. R. Evid. 404(b)(1).

[28] *United States v. Verduzco*, 373 F.3d 1022, 1026 (9th Cir. 2004).

[29] *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003) (citing *Williams*, 989 F.2d at 1070).

[30] *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995).

[31] *United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1327–28 (9th Cir. 1992) (citing *United States v. Perkins,* 937 F.2d 1397, 1401–1402 (9th Cir.1991)).

5

If evidence falls within the scope of Rule 404(b), it "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[32] To introduce evidence under Rule 404(b),

> The Government carries the burden to prove that the proposed evidence satisfies four requirements:
>
> (1) the evidence tends to prove a material point (materiality); (2) the other act is not too remote in time (recency); (3) the evidence is sufficient to support a finding that defendant committed the other act (sufficiency); and (4) [in certain cases,] the act is similar to the offense charged (similarity).[33]

If the Court finds these requirements are met, it must then determine, under Rule 403, whether the "probative value [of the evidence] is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[34]

### C. Relevancy and Prejudice

Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence[] and . . . the fact is of consequence in determining the action."[35] Relevant evidence is admissible unless the United States Constitution, a federal statute, the rules of evidence, or the Supreme Court provide otherwise; irrelevant evidence is inadmissible.[36] However, relevant evidence may still be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice,

---

[32] Fed. R. Evid. 404(b)(2).

[33] *United States v. Charley*, 1 F.4th 637, 647 (9th Cir. 2021).

[34] Fed. R. Evid. 403; *see also United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005).

[35] Fed. R. Evid. 401.

[36] Fed. R. Evid. 402.

6

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[37]

## IV. DISCUSSION

Because the Government seeks to introduce only two categories of evidence stemming from Baldwin's arrest in Florida, the Court considers whether the following categories of evidence are admissible: (1) Baldwin's refusal to identify himself to police or provide his fingerprints and (2) photographs of Baldwin's tattoos and statement about the 1488s.

### A. Baldwin's efforts to conceal his identity during a Florida traffic stop

The Court finds that the Government has not shown that Baldwin's contact with Florida law enforcement "came in the course of the conduct with which he was charged" here.[38] Baldwin argues that his "contact with Florida law enforcement should be excluded because it is wholly unrelated to any material issue in this case, and it is in no way similar to the instant charges faced by the defendant."[39] He further argues that his interaction with Florida law enforcement has no bearing on this case because the events "post-dated the events that led to the charges in this case by more than seven months" and the subsequent act is not similar to the charges Baldwin faces here.[40] The Government disagrees and asserts that Baldwin's refusal to give his name to the police and cooperate with a fingerprinting procedure "are admissible as evidence of his consciousness of

---

[37] Fed. R. Evid. 403.

[38] *Ramirez-Jiminez*, 967 F.2d at 1327.

[39] Dkt. 804 at 3.

[40] *Id.* at 2.

guilt."[41] The Government further argues that the risk of prejudice to Baldwin is low because Baldwin ultimately identified himself for law enforcement.[42]

In the Ninth Circuit, providing a false name or refusing to provide fingerprints to arresting officers may fall outside the scope of Rule 404(b) evidence as evidence of consciousness of guilt.[43] To support this proposition, the Government cites a series of cases, including *United States v. Ramirez-Jiminez*.[44] The court in *Ramirez-Jiminez* held that false "statements to the officers came in the course of the conduct with which [the defendant] was charged, and were probative of [the defendant's] consciousness that his conduct was illegal."[45] But "[C]ourts have cautioned that evidence . . . to prove consciousness of guilt for one specific crime is particularly problematic in circumstances like these where a defendant is wanted for another infraction."[46]

It is not clear that Baldwin's refusal to provide his name or fingerprints to Florida law enforcement is probative of his guilt for crimes he allegedly committed in Alaska. Baldwin was arrested in Florida in 2018, but the Government did not charge him in Alaska until 2019. Apart from the Government's allegation that Baldwin fled Alaska following Staton's death, the Government has not presented facts that it was in pursuit of Baldwin at the time of his Florida arrest or that Baldwin had reason to believe the Government was pursuing him. Separately, the

---

[41] Dkt. 953 at 3.

[42] *Id.* at 4–5.

[43] *Id.* at 4 (citing *Ramirez-Jiminez*, 967 F.2d at 1327–28).

[44] 967 F.2d 1321.

[45] *Id.*

[46] *United States v. Labbad*, No. EDCR 03-00039(A)-RT, 2013 WL 12387558, at *4 (C.D. Cal. Mar. 18, 2013) (using evidence of flight to prove consciousness of guilt) (citing *United States v. Foutz*, 540 F.2d 733, 740 (4th Cir. 1976)).

Court notes that Baldwin's refusal to identify himself in Florida appears probative of guilt for the crimes he allegedly committed in Florida. According to the arrest report, Baldwin's contact with Florida law enforcement stemmed from separate "violent" criminal activities.[47] Even if the charges Baldwin pleaded guilty to were relatively minor compared to the charges he now faces in Alaska, it is not apparent that Baldwin's refusal to identify himself in Florida was due to a concern that he would be apprehended for Staton's death in Alaska.

Finally, the Court finds that Baldwin's unwillingness to identify himself is consistent with the alleged tenets of the 1488s, and not probative of guilt for separate crimes. The Government alleges that members of the 1488s criminal enterprise took affirmative steps "to avoid law enforcement detection" and "were forbidden from cooperating with law enforcement."[48] Given these allegations, it also seems reasonable that Baldwin may have refused to identify himself to law enforcement because of his attitude toward law enforcement generally.

As the court in *United States v. Wagner*[49] found, here "[t]he chain of inferences between a defendant's refusal to be examined and his guilt of the underlying crime is, at best, much too attenuated and speculative to support a 'consciousness of guilt' instruction," or inference.[50] The

---

[47] Dkt. 804 at 7.

[48] Dkt. 558 at 9.

[49] 834 F.2d 1474 (9th Cir. 1987).

[50] *Id.* at 1485. Contrary to the Government's suggestion, *Wagner* does not stand for the broad proposition that a defendant's refusal to provide fingerprints is probative of their consciousness of guilt for an unrelated crime committed well before the defendant's arrest. *Wagner* involved a defendant's refusal to submit to a mental examination. *Id.* at 1484. While the Ninth Circuit mentioned that a defendant's refusal to provide fingerprints is related to the defendants "guilt or innocence *of the underlying crime*," the issue was not squarely before the court. *Id.* (emphasis added). In fact, the Ninth Circuit concluded that the defendant's refusal to submit to a mental examination was improper to support a consciousness of guilt instruction because of the

9

Government has not identified a permitted use under Rule 404(b) by which the Court could admit evidence from Baldwin's Florida arrest. For these reasons, the Court **GRANTS** Baldwin's Motion and denies the Government's request to use evidence of Baldwin's refusal to provide law enforcement his name and fingerprints as evidence of his consciousness of guilt for the crimes alleged here.

### B. Baldwin's Tattoos

Baldwin also argues primarily that his tattoos "are totally irrelevant to the material issues in this trial" and alternatively that "even if some remote relevance exists, it is clearly outweighed by unfair prejudice."[51] According to the April 2018 Seminole County Arrest Report, Baldwin has at least nine tattoos, including one "8'Swastika'8"; one swastika; two "kill rats"; and two "fuck cops."[52]

The Government asserts that photographs of Baldwin's white supremacist and gang-related tattoos are admissible as "prima facie evidence of the charged offense (without resort to Rule 404(b)) because they demonstrate the existence of the 1488s enterprise and Baldwin's affiliation with it." The Government further argues that Baldwin's tattoos are directly relevant to prove motive.[53]

As a threshold matter, the Court agrees with the Government that photographs of Baldwin's tattoos are relevant because they are direct evidence of Baldwin's membership in the 1488s and of

---

"attenuated and speculative" chain of inferences such a finding would require. *Id.* If anything, the Ninth Circuit's reasoning in *Wagner* instructs the Court to reject the Government's argument here.

[51] Dkt. 804 at 2–3.

[52] *Id.* at 6.

[53] Dkt. 953 at 5.

the elements of the charged enterprise offense. Thus, photographs of Baldwin's tattoos that demonstrate his affiliation with the 1488s are relevant to show his membership in the alleged enterprise.[54]

The Court next finds that evidence of Baldwin's tattoos falls outside the scope of Rule 404(b) because it is inextricably intertwined with the charged crimes. For example, Baldwin is charged with VICAR offenses as an alleged member or associate of the 1488s.[55] A VICAR conviction requires proof of four elements: "(1) that the criminal organization exists; (2) that the organization is a racketeering enterprise; (3) that the defendants committed a violent crime; and (4) that they acted for the purpose of promoting their position in the racketeering enterprise."[56] It follows that the Government must prove that the 1488s existed as a criminal enterprise and that Baldwin was a member or associate of that enterprise. According to the Government, the 1488s use tattoos "to identify themselves and demonstrate their affiliation."[57] The Court, therefore, finds the evidence of membership in the 1488s goes directly to the charges and falls outside the scope of Rule 404(b).

Finally, the Court does not find that the probative value of Baldwin's tattoos is substantially outweighed by the risk of unfair prejudice. The 1488s' tattoos, or "patches," displaying Nazi-inspired symbols or animosity toward law enforcement are central to the Government's case and probative in several ways. The Government asserts "[t]he 1488s employed Nazi-derived symbols

---

[54] *United States v. Fernandez*, 388 F.3d 1199, 1245–46 (9th Cir. 2004).

[55] Dkt. 558.

[56] *United States v. Bracy*, 67 F.3d 1421, 1429 (9th Cir. 1995) (citing *United States v. Vasquez-Velasco*, 15 F.3d 833, 842 (9th Cir. 1994)); *United States v. Banks*, 514 F.3d 959 (9th Cir. 2008).

[57] Dkt. 558 at 3.

11

to identify themselves and demonstrate their affiliation with the gang."[58] The Government also alleges "violence against law enforcement was an accepted means of gaining standing within the 1488s."[59] According to the Government, the 1488s' tattoos "were [also] status symbols and currency within the gang."[60] The 1488s purportedly punished its members—*including the alleged victims in this case*—by "depatching" or forcibly obliterating their gang tattoos.[61] Photographs of Baldwin's tattoos related to the 1488s are probative of his membership in an enterprise.[62] The probative value of the photographs of Baldwin's tattoos is not "clearly outweighed by the danger of unfair prejudice" that the jury could discover Baldwin holds certain white supremacist or anti-law enforcement beliefs or belongs to an unlawful organization.[63] The Court therefore **DENIES** Baldwin's request to exclude the photographs of his tattoos.

///

//

/

---

[58] *Id.* at 6 (quoting Dkt. 558 at 3).

[59] *Id.* at 7 (quoting Dkt. 558 at 6).

[60] *Id.*

[61] *Id.*

[62] *See United States v. Ledbetter*, 929 F.3d 338, 363 (6th Cir. 2019) ("Gang tattoos 'may be highly probative of an individual's membership in a particular gang' and thus are properly admissible 'in cases where the interrelationship between people is a central issue,' such as where a RICO conspiracy is alleged.").

[63] Dkt. 804.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendant Glen Baldwin's Motion to Exclude Evidence of Other Crimes, Wrongs, or Acts Pursuant to Rule 404(b) at Docket 804.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 13th day of March, 2022.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE